UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY HEADRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:25-CV-1280-ZMB |
| | ) | |
| DANIEL KEEN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on self-represented Plaintiff Timothy Headrick's Civil Rights Complaint, Doc. 1, and Application to Proceed in District Court Without Prepaying Fees or Costs, Doc. 18. The Court grants Headrick's Application and waives the filing fee. After screening the Complaint under 28 U.S.C. § 1915(e)(2), the Court dismisses Headrick's official-capacity and conditions-of-confinement claims, but issues process for his First Amendment retaliation claims.

## BACKGROUND

### I. Factual Background[1]

Headrick was booked into the St. Charles County Jail as a pretrial detainee on June 27, 2025. Doc. 1 at 4. The next day, he was placed in N-Block under restrictive conditions of confinement and was kept there for 11 days. *Id*. During that time, Headrick claims he had no access to drinking water in his cell and was denied outdoor recreation. *Id*. Although he was allowed shower time, Headrick alleges that the showers in N-Block had drains that were "backed up," which caused inmates to stand in "feces and urine." *Id.* Headrick complained about the poor conditions of N-Block to "every officer that worked 1st or 2nd Shift" but does not know the names of those officers because their "name tags [were] not exposed." *Id.*

[1] As required at this stage, the Court accepts Headrick's allegations as true and draws all reasonable inferences in his favor. *See Jones v. Douglas Cty. Sheriff's Dep't,* 915 F.3d 498, 499 (8th Cir. 2019).

Headrick was later moved to Cell 4 of H-Block, which he describes as "disgusting and filthy." *Id*. He alleges that there was dried urine on the floor of his cell, "small amounts of food in the tracks," and cockroaches and fruit flies inside the cell.[2] *Id*. Headrick claims he asked an unnamed officer on the second shift if he could have supplies to clean the cell floor but was denied. *Id.* Headrick then sought cleaning supplies from Officers Rodriguez and Salvador to clean the cells and the showers in H-Block, but both officers allegedly declined the request. *Id.* at 8. However, it appears that Headrick obtained cleaning supplies at some later time. *See id*.

A few days later, Headrick spoke to St. Charles County Jail Director Daniel Keen about the conditions inside H-Block, telling him that that there was peeling paint on the walls and feces in the cells. *Id.* Keen purportedly responded that there would not be any changes implemented, and if inmates did not like it, they could be moved to administrative segregation. *Id.* The same day, Officer Arumba allegedly told Headrick he was collecting the previously provided cleaning supplies and reducing recreation time by two hours because Headrick had filed grievances. *Id*. The next day, Officer Allen gave Headrick a "disciplinary ticket" and took his tablet privileges stating, "You write grievances, we write tickets." *Id*. It is unclear how long Headrick was incarcerated in H-Block, but his allegations concerning H-Block span a period of 16 days. *Id.* at 4, 8.

Headrick also filed a grievance on July 12, 2025, complaining about the hourly charge to access the law library. *Id.* at 8. Two days later, Officer Scott Wattelet answered Headrick's grievance, purportedly telling him that the jail made money by charging fees for access to the law library. *Id.* Wattelet said, "[I]f you think you will come to St. Charles County and grieve anything

[2] Headrick claims he told Officer Foxx about "vermin" in his cell and that she replied, "[W]elcome to St. Charles County." Doc. 1 at 4. He also allegedly informed Officer Hayden about the insects inside of his cell, but Hayden said he was unable to help. *Id*. Furthermore, Headrick states that he asked Officer Johnson for help getting rid of the "insect infestation" in the cells, but Johnson told him to "get used to it." *Id.* at 8.

you will go to segregation." *Id*. After Headrick filed a grievance complaining about the lack of access to a tablet and to recreation, Wattelet removed a name from Headrick's visitor list.[3] *Id*.

## II. Procedural Background

Headrick filed this civil-rights action in August 2025. Doc. 1. He alleges that his rights were violated by 13 correctional officers who were working at the St. Charles County Jail: Director Daniel Keen, Officer Foxx, Officer Hayden, Officer Scott Wattelet, Corporal Douglas, Officer Rodriguez, Officer Salvador, Officer Johnson, Officer Arumba, Corporal Allen, Unknown N-Block Officer, and two Unknown H-Block Officers. *Id.* at 3–7; Doc. 1-3. Headrick sues these Defendants in both their individual and official capacities, Doc. 1 at 3–7, and he seeks monetary and punitive damages, *id.* at 9. Headrick also seeks an injunction requiring St. Charles County "to stop charging inmates to use the law library." *Id.*

When he filed his Complaint, Headrick was still incarcerated in the St. Charles County Jail, but he was released in January 2026. *See* Doc. 15. Accordingly, the Court ordered him to provide an updated mailing address and phone number. *Id*. After Headrick did so, the Court ordered him to either pay the $405 filing fee or file a new Application to Proceed in District Court Without Prepaying Fees or Costs, and Headrick filed a new Application later that month. Docs. 17–18.

## LEGAL STANDARD

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action "fails to state a claim on which relief may be granted." To sufficiently state a claim, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S.

[3] Headrick also claims that his due process rights were limited while he was kept in H-Block because, at times, he lacked access to television, recreation, showers and the law library. Doc. 1 at 4. However, he indicates that he also was able to take showers at other times. *Id.* at 4, 8. He also claims to have been given cold food during his time at H-Block. *Id.* at 4. But Headrick fails to allege exactly when and how long these conditions occurred.

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plausible claim also requires more than the "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). But the Court need not assume unalleged facts. *See Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for a self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). When reviewing a self-represented litigant's complaint under section 1915, the Court liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). In other words, if a court can discern "the essence of an allegation," it should interpret the complaint in a way that permits it to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015).

## DISCUSSION

### I. Application to Proceed in Forma Pauperis

As an initial matter, the Court grants Headrick's Application to proceed without paying the filing fee. Federal courts must collect a filing fee from a party "instituting any civil action, suit, or proceeding." 28 U.S.C. § 1914. But courts may waive this fee for individuals who demonstrate an inability to pay. *Id*. § 1915(a)(1). Proceeding in forma pauperis ("IFP"), or without prepayment of fees and costs, "is [a] matter of privilege, not of right." *Onstad v. Wilkinson*, 534 F. App'x 581, 582 (8th Cir. 2013). To obtain IFP status, a litigant must file an affidavit demonstrating their inability to pay. 28 U.S.C. § 1915(a)(1).

Headrick's renewed Application lists a gross income of approximately $2,000 per month, $700 in monthly expenses, and no money in savings. Doc. 2 at 1–2. In other words, the Application demonstrates that Headrick cannot pay the costs associated with this litigation and "provide himself and dependents with the necessities of life." *See Ford v. Bd. Of Healing Arts,* No. 4:23-CV-1392-SEP, 2023 WL 8449071, at *1 (E.D. Mo. Dec. 6, 2023) (citation omitted). As such, the Court grants Headrick's Application and waives the filing fee.

**II. Official-Capacity Claims**

The Court next considers Headrick's official-capacity claims. "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Mo. Elec. Coops. v. Missouri*, 229 F. Supp. 3d 888, 891 (E.D. Mo. 2017) (quoting *Wills v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Local government entities are subject to suit for constitutional violations under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But *Monell* liability attaches only where the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018).

Here, Headrick's allegations establish that the Defendants were employed by St. Charles County. But the Complaint contains no non-conclusory allegations of a policy or custom, and Headrick also fails to allege an unconstitutional failure to train. As such, the Court dismisses Headrick's official-capacity claims without prejudice.[4]

---

[4] Additionally, Headrick's "request for injunctive relief is moot [due to] his release from custody." *See Fisherman v. Young*, 2025 WL 1435956, at *4 (D. Minn. Apr. 24, 2025) (collecting cases).

## III. Individual-Capacity Claims

### a. Conditions-of-Confinement Claims

The Supreme Court has determined that the government may detain defendants before trial and "subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979). There are two ways to determine whether conditions rise to the level of punishment. First, a plaintiff can show that his conditions of confinement were "intentionally punitive." *Stearns v. Inmate Servs. Corp.,* 957 F.3d 902, 907 (8th Cir. 2020). Alternatively, a plaintiff can "show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id*. If a court finds that conditions are "arbitrary or excessive," it may infer that the governmental action was unconstitutionally punitive. *Id.* Additionally, pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (citation omitted).

In this case, Headrick alleges no facts permitting an inference that the conditions of his confinement amounted to punishment. He points to conditions in the two cellblocks where he was incarcerated (H-Block and N-Block) as a whole and—to a lesser extent—in his cell. Specifically, Headrick alleges that there was dried urine on the floor of his cell, "small amounts of food in the tracks," and cockroaches and fruit flies. Doc. 1 at 4. More generally, he complains that the cells and the showers in both blocks were generally dirty, that there were bugs in the cellblocks, and chipping paint and feces on the cell walls and floors. *Id.* But "[c]onditions of confinement that cause mere discomfort or inconvenience do not amount to cruel and unusual punishment." *Brakeall v. Stanwick-Klemik*, 2020 WL 1180727, at *11 (D.S.D. Mar. 11, 2020) (citation omitted);

*see also Brooks v. Daniels*, 2012 WL 5866453, at *2 (W.D. Ky. Nov. 19, 2012) ("While unpleasant, the alleged conditions of having insects in a cell is not below the constitutional standard of the minimal civilized measure of life's necessities." (quotation omitted)). Further, Headrick does not suggest his conditions of confinement were the result of an "expressly demonstrated intent to punish."[5] *See Stearns,* 957 F.3d at 907. Thus, he has not properly alleged that the conditions were intentionally punitive.

Additionally, Headrick does not allege that he was subjected to those conditions for an excessive amount of time. *See Paige v. Murray*, No. 1:12-CV-40-SNLJ, 2014 WL 4594172, at *3 (E.D. Mo. Sept. 12, 2014) ("Short durations of poor sanitation in a prison cell may not rise to the level of a Constitutional violation, particularly where cleaning supplies are available."). While Headrick alleges he was in N-Block for 11 days and apparently was in H-Block for about 16 days,[6] the Complaint does not state how long he was subjected to each of the alleged unlawful conditions. For example, Headrick does not allege he was unable to shower or sleep for an extended period, that he lacked adequate drinking water[7] or food, or that he was deprived of proper medical care. Thus, there are no facts permitting the inference that Headrick was subjected to unconstitutionally punitive conditions at St. Charles County Jail.

---

[5] While Headrick claims that many Defendants were aware of the unsanitary conditions in his cells, *see* Doc. 1 at 4, 8, he never asserts that his placement in N-Block or relocation to H-Block was done for the purpose of punishing him. He also does not allege that the conditions in his cell were worse than the conditions in other inmates' cells.

[6] At least at some point, inmates in H-Block were provided with cleaning supplies, as Headrick complains that Arumba *collected* supplies previously given to inmates to retaliate for his grievances. Doc. 1 at 8; *see White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (finding no Eighth Amendment violation where cleaning supplies were available to a prisoner who was confined to unsanitary cell for 11 days).

[7] Although Headrick indicates that his cell in N-Block did not have water, he does not suggest that he had no access to water during his stay at the jail, or that he was not provided with water or beverages with his daily food. While "administrative confinement in a dry cell is unpleasant and often unsanitary, so long as the conditions of that confinement are not foul or inhuman, and are supported by some penological justification, they will not violate the Eighth Amendment." *Thomas v. Tice*, 948 F.3d 133, 139 (3d Cir. 2020) (citation omitted).

While reasonably adequate sanitation, such as a properly draining shower, is a basic identifiable human need, the Complaint lacks allegations that plausibly suggest that Defendants were deliberately indifferent to his health or safety for an extended period. In particular, Headrick has not specified how long he had to deal with an improperly draining shower or how long human waste was present. As explained above, limited exposure to any unclean and uncomfortable conditions is not enough to establish unlawful conditions of confinement.

Moreover, Headrick does not allege that he suffered any health issues or other injury because of the exposure to the conditions he describes in the Complaint. *See Smith v. Copeland*, 87 F.3d 265, 268–69 (8th Cir. 1996) (holding that exposure to raw sewage for four days as a result of an overflowing toilet "d[id] not rise to a level of constitutional significance because plaintiff did not allege that he was exposed to disease or suffered any other consequences of the exposure" (internal citations omitted)). And even if Headrick had alleged health issues or injury, his condition-of-confinement claims still would be subject to dismissal because he fails to allege facts showing how each named Defendant was directly involved in or personally responsible for harming him. Indeed, notwithstanding the liberal construction afforded to pro se filings, the Court cannot assume facts that Headrick has not alleged. *See Stone*, 364 F.3d at 914–15.

At best, Headrick's allegations against Defendants are the sort of "unadorned, the-defendant-unlawfully-harmed-me" accusations that the Supreme Court has found deficient, and that this Court is not required to presume to be true. *See Iqbal*, 556 U.S. at 678. And to the extent Headrick seeks to hold Keen liable for his conditions of confinement claims because he held a supervisory position, such claims are not cognizable here.[8] *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)

[8] At most, Headrick told Keen that there was peeling paint on the walls and feces in the cells of H-Block for an unspecified period of time. Doc. 1 at 8. But that those allegations do not amount to an unlawful condition of confinement absent other facts concerning "the severity and duration of the complained-of conditions." *See Murphy v. Unknown*, No. 1:24-CV-173-HEA, 2024 WL 5262866, at *6 (E.D. Mo. Dec. 31, 2024).

(finding that claims sounding in respondeat superior are not cognizable under section 1983). Thus, the Court dismisses Headrick's conditions-of-confinement claims without prejudice.[9]

**b. First Amendment Retaliation Claims**

A viable First Amendment retaliation claim must establish that: (1) the plaintiff "engaged in a protected activity, (2) [a] government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). The right to be free from retaliation for availing oneself of the prison grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) (recognizing "that actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983"). And the threat of retaliation is sufficient injury to support a First Amendment Claim if the threat was made in retaliation for an inmate's use of grievance procedures. *Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). But "[t]he ordinary-firmness test is designed to weed out trivial matters from substantial violations." *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020).

Headrick identifies four instances of retaliation. Doc. 1 at 8. First, Arumba allegedly collected cleaning supplies and reduced recreation time by two hours for the inmates celled on H-Block because Headrick had filed grievances. *Id*. Next, Allen purportedly gave Headrick a "disciplinary ticket" after he filed a grievance and then took his tablet privileges stating, "You write grievances, we write tickets." *Id*. Wattelet allegedly threatened Headrick with segregation if he grieved "anything," and, in a different incident, removed Headrick's visitor from the visitor's list after he filed a grievance. *Id*.

[9] The dismissal of Headrick's official-capacity and conditions-of-confinement claims means that no claims remain against Keen, Foxx, Hayden, Douglas, Rodriguez, Salvador, Johnson, the unknown N-Block Officer, and the two Unknown H-Block Officers. As such, the Court dismisses those Defendants without prejudice.

Accepting these allegations as true, Headrick has, for purposes of initial review, stated a facially plausible First Amendment retaliation claim. Filing prison grievances is a protected activity, *see Santiago*, 707 F.3d at 991, and Headrick adequately alleges that retaliation occurred because he filed grievances. And "[t]he question of ordinary firmness 'is usually best left to the judgment of the jury.'" *Harmon v. Downing*, No. 4:23-CV-1105-SEP, 2024 WL 4188675, at *3 (E.D. Mo. Sept. 13, 2024) (citing *Santiago*, 707 F.3d at 992). Accordingly, the Court directs the Clerk of Court to issue process or cause process to issue upon the Complaint as to Defendants Arumba, Allen, and Wattelet.

**CONCLUSION**

Accordingly, the Court **GRANTS** Plaintiff Timothy Headrick's [18] Application to Proceed in District Court Without Prepaying Fees or Costs. After initial review of the Complaint under 28 U.S.C. § 1915(e)(2)(B), the Court **DISMISSES** Headrick's official-capacity and conditions-of-confinement claims without prejudice. The Clerk of Court is directed to issue process or cause process to issue on the remaining claims as to Defendants Officer Arumba, Corporal Allen, and Officer Scott Wattelet at the St. Charles County Jail, 301 North Second Street, St. Charles, Missouri 63301.

So ordered this 18th day of September 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE